AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>REEMAL PATEL<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>) | Case No. 12-8326-JMH |

FILED by _____ D.C.

AUG 15 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2/1/2012 through 8/15/2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); all in violation of Title 21, United States Code, Section 846. | Conspiracy to Possess with Intent to Distribute a controlled substance analogue, namely, 4-Methyl-N-Ethylcathinone, a/k/a "Molly," a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Eric Fess
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/15/2012__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__       Hon. U.S. Magistrate Judge James M. Hopkins
*Printed name and title*

## AFFIDAVIT
## OF
## ERIC FESS
## SPECIAL AGENT
## DRUG ENFORCEMENT ADMINISTRATION

I, Eric Fess, being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) United States Department of Justice (DOJ), currently assigned to the Miami, Florida, Field Division. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1)(e) and Title 21, United States Code.

2. I have been a SA with the DEA since November 19, 2002. I am currently assigned to the DEA West Palm Beach Resident Office. I am currently assigned to investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include cocaine hydrochloride, "crack" cocaine, marijuana, "Molly," and MDMA.

3. While employed with the DEA, I have received ongoing training to include classes in Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral Telecommunication Interceptions. As a SA with the DEA, I have conducted investigations of, and have been instructed in investigative techniques, concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing, or using controlled substances, and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively. Based upon this

1

experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also conducted physical surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also frequently communicate via text messages. I have also conducted investigations involving the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents.

4. The information contained in this affidavit is based on my personal participation in this investigation, from information provided to me by other agents and analysts for DEA and other federal, state and local law enforcement agents and officers, as well as cooperating sources of information. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint for Reemal PATEL, I have not set forth every fact known to me regarding this investigation. Rather, I have set forth only the facts I believe are necessary to establish probable cause for the arrest of Reemal PATEL for the offense of Conspiracy to Possess with Intent to Distribute a controlled substance analogue, namely, 4-Methyl-N-Ethylcathinone, a/k/a "Molly," a Schedule I controlled substance analogue, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); all in violation of Title 21, United States Code,

Section 846. Pursuant to Title 21, United States Code, Sections 802 and 813, a controlled substance analogue shall, to the extent intended for human consumption, be treated for the purposes of any Federal law as a Schedule I controlled substance. Pursuant to Title 21, United States Code, Sections 841(a)(1) and 846 it is unlawful to possess with intent to distribute and distribute a Schedule I controlled substance unless authorized under Federal law. Based upon the totality of the investigation to date, I believe that the possession with intent to distribute and distribution of 4-Methyl-N-Ethylcathinone, a/k/a "Molly," as outlined below by Reemal PATEL was intended for human consumption and was not authorized under any Federal law.

## FACTS IN SUPPORT OF PROBABLE CAUSE

5.  Since approximately May of 2012, I have assisted with an investigation targeting individuals in Palm Beach County, Florida, Brentwood, Tennessee, and elsewhere who are importing and distributing 4-Methyl-N-Ethylcathinone, a/k/a/ "Molly" (MOLLY), a Schedule I controlled substance analogue. Specifically, on May 11, 2012, an undercover agent (UC) met with Randall KELLER (KELLER) in Palm Beach County, Florida in the Southern District of Florida for the purpose of making an undercover purchase of two (2) ounces of MOLLY from KELLER. During negotiations between the UC and KELLER, KELLER told the UC that KELLER intended on meeting his (KELLER's) source of supply later that same day to receive the MOLLY ordered by the UC. Based on information provided by KELLER surveillance was maintained on KELLER. Surveillance agents observed KELLER meet with an individual later identified as David TORRICO (TORRICO). Following the meeting between KELLER and TORRICO, KELLER delivered approximately two ounces of MOLLY to the UC in Boca Raton, Florida in the Southern District of Florida.

6. On May 16, 2012, the UC arranged to purchase approximately two (2) kilograms of MOLLY from KELLER for $41,000.00. On the same day, at approximately 1:40 P.M., agents were conducting surveillance at TORRICO's residence and observed a Federal Express driver deliver a box to TORRICO's residence. Shortly thereafter, surveillance observed KELLER and TORRICO arrive in separate vehicles at the meet location chosen by law enforcement for the undercover purchase. After arriving at that location, KELLER met with and delivered approximately two (2) kilograms of MOLLY to the UC. Thereafter, KELLER and TORRICO were placed under arrest. The MOLLY delivered by KELLER to the UC was contained in two silver Mylar bags with lettering indicating the MOLLY may have originated from China. The two Mylar bags containing the MOLLY were further contained in a Federal Express box. The two kilograms of MOLLY seized by law enforcement were subsequently sent to the DEA laboratory for further analysis. The DEA laboratory's testing and analysis of the MOLLY seized confirmed that the substance was in fact 4-Methyl-N-Ethylcathinone Hydrochloride, a Schedule I controlled substance analogue.

7. Following his arrest, TORRICO was advised of his *Miranda* rights which he waived and agreed to speak with law enforcement. During his post *Miranda* statement, TORRICO initially told law enforcement that his (TORRICO's) source of supply was an individual from Tennessee known to him as "Sergio." After being confronted by law enforcement, TORRICO then admitted that his (TORRICO's) source of supply for MOLLY was Reemal PATEL (PATEL) who resides in Tennessee and uses the alias "Sergio." TORRICO said that PATEL sent him (TORRICO) the two kilograms of MOLLY sold to the UC via Federal Express which arrived earlier that day. TORRICO also admitted that he began purchasing MOLLY from PATEL in approximately February of 2012.

8. TORRICO said that PATEL sent an email to TORRICO from PATEL's email address birdmanrp@gmail.com which contained the Federal Express tracking number of the box that contained the two kilograms of MOLLY. DEA Special Agent Eric Fowler reviewed the email sent by PATEL from email address birdmanrp@gmail.com which read "FedEx overnight #800110640510." TORRICO said that he (TORRICO) still owes PATEL approximately $28,800.00 for four (4) kilograms of MOLLY including the two kilograms seized by law enforcement on May 16, 2012. Further, TORRICO stated that the MOLLY was intended by PATEL and he (TORRICO) for further distribution and human consumption.

9. According to TORRICO, PATEL stores the MOLLY at a storage warehouse called "Mallory Station Consignment" located at 600 Church Street, Brentwood, Tennessee. TORRICO said that PATEL also mails MOLLY from the storage warehouse location.

10. Agents have obtained records from Mallory Station Storage, 600 Church Street, Brentwood, TN and have learned that PATEL is currently renting Storage Unit 514. Records from Mallory Station Storage also reveal that on May 15, 2012, at approximately 3:39 p.m. PATEL's name is listed as having been granted access to Storage Unit 514. Law enforcement has also confirmed through Federal Express records that the box with assigned tracking number 800110640510 was tendered to a Federal Express branch in Brentwood, Tennessee on May 15, 2012, at approximately 4:14 p.m. and delivered to "David" on May 16, 2012, in Florida.

11. On May 16, 2012, following the arrest of TORRICO and KELLER, a federal search warrant (Case No. 12-8198-AEV) was executed at TORRICO's residence located at 350 Crestwood Circle, Apartment 305, Royal Palm Beach, Florida. Several items were seized including an additional 1,515 grams of MOLLY and a Federal Express receipt. The Federal Express receipt indicated the tracking number was 800110640510 and the receipt listed the

sender as "Sergio" with a listed address of 5543 Edmonson Pike Suite 63, Nashville, TN, and telephone number of (615) 417-2371.

12. During the course of this ongoing investigation, in approximately June of 2012, law enforcement developed a confidential source (CS). The CS told law enforcement that the CS was present with TORRICO and PATEL in Tennessee in early 2012 when PATEL discussed supplying TORRICO with MOLLY. The CS also said that the CS was with TORRICO at a gym in Tennessee also in early 2012 when PATEL showed TORRICO MOLLY contained in a silver cellophane bag. The CS said the silver cellophane bag was approximately 8 ½" x 11" in size similar to that of a ream of standard letter sized paper. The CS further said that in approximately early 2012, the CS was in a vehicle with TORRICO in Tennessee when TORRICO pointed out a public storage business and told the CS that that was the location where PATEL stored MOLLY.

13. The CS also stated that the public storage business pointed out by TORRICO was either "Stor-N-Lock" located at 520 Summit View Pl., Brentwood, TN or "Mallory Station Storage" located at 600 Church Street E, Brentwood, TN. After looking online of a map of the area, the CS stated that of the two public storage businesses the CS believes that the storage unit pointed out by TORRICO is the Mallory Station Storage. During the course of this ongoing investigation, a number of recorded telephone calls, as outlined below, were made by the CS, while located in the Southern District of Florida, to PATEL using telephone number as (615) 417-2371. In addition, PATEL has sent the CS an email using email address birdmanrp@gmail.com requesting that the CS contact PATEL.

14. On August 2, 2012, the CS placed a recorded telephone call to PATEL using telephone number (615) 417-2371. During the telephone conversation between the CS and PATEL, the CS told PATEL that TORRICO was caught with the MOLLY and is in jail. PATEL

6

told the CS about another situation in which PATEL referred to an individual as "his boy." Specifically, PATEL explained that "his boy" was caught with "two whole ones" and that he had an upcoming court date. As instructed by law enforcement, the CS told PATEL that the CS had approximately $30,000.00 of TORRICO's money. As noted above, TORRICO still owes PATEL approximately $28,800.00 for four (4) kilograms of MOLLY.

15. During the continued conversation, PATEL asked the CS how the CS was going to get the money to PATEL. The CS told PATEL that the CS intended on driving to Tennessee in the near future. PATEL asked the CS if they had "any stuff left" which the CS understood to mean MOLLY. The CS told PATEL they had nothing left. PATEL then asked the CS to ship the money via Federal Express. PATEL provided the address of 5543 Edmonson Pike, Suite 63, Nashville, Tennessee to be used to send the money. The CS asked PATEL if this address was to PATEL's residence or to PATEL's warehouse referring to the storage unit. PATEL told the CS that this address was to a lockbox. The CS asked PATEL about getting more MOLLY. PATEL told the CS that once PATEL received the money from the CS another box containing MOLLY would be shipped out. As noted above, the address of 5543 Edmonson Pike, Suite 63, Nashville, Tennessee provided by PATEL to the CS is the same address listed for the sender on the Federal Express shipping label seized from TORRICO's residence during the execution of the search warrant following TORRICO's arrest.

16. On August 3, 2012, the CS placed a second recorded phone call to PATEL using telephone number (615) 417-2371. As directed by law enforcement, the CS told PATEL that the CS did not have access to the $30,000.00 and that the CS would not be able to send the money to PATEL. The CS then told PATEL that the CS had somebody who was willing to pay up front for "stuff" referring to the MOLLY. PATEL responded, "Oh, Alright." The CS then explained

7

that it would not be the way that TORRICO and PATEL did it by that "turn around shit" referring to utilizing Federal Express. Rather, the CS stated that the CS would be in Tennessee with cash on hand.

17. During the continued telephone conversation, the CS and PATEL agreed to meet in Tennessee on or about August 14, 2012. The CS asked PATEL how much PATEL was charging TORRICO. PATEL responded "$7,500 apiece." The CS told PATEL that TORRICO told the CS that PATEL was charging him (TORRICO) $7,000 apiece. PATEL told the CS it was "$7,500.00 apiece." PATEL told the CS that there were "four of them" (which the CS understood to mean four kilograms of MOLLY) which came to $30,000.00. PATEL also reiterated that TORRICO owed PATEL $30,000.00.

18. On August 14, 2012, the CS, who had travelled to Tennessee at law enforcement's direction, spoke with PATEL and agreed to meet with PATEL and purchase one kilogram of MOLLY for $7,500.00 on August 15, 2012. On August 15, 2012, law enforcement agents conducted surveillance outside of PATEL's storage unit. Law enforcement agents observed PATEL enter the storage unit and exit shortly thereafter. Law enforcement agents approached PATEL and learned that he was in possession of one kilogram of MOLLY. Ultimately, PATEL was arrested and advised of his *Miranda* warnings. PATEL waived his *Miranda* rights and agreed to speak with law enforcement. During PATEL's post *Miranda* statement to law enforcement, he admitted to having sold the four (4) kilograms of MOLLY to TORRICO as outlined above. PATEL also admitted that the one kilogram of MOLLY in his possession was intended to be sold to the CS. Lastly, PATEL admitted that his source of supply for the MOLLY is an individual in China.

19. Based upon the aforementioned, I respectfully submit that probable cause exists to

8

believe that Reemal PATEL has committed the offense of Conspiracy to Possess with Intent to Distribute a controlled substance analogue, namely 4-Methyl-N-Ethycathinone, a/k/a "Molly," a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846.

AFFIANT FURTHER SAYETH NAUGHT.

_____
SPECIAL AGENT ERIC FESS
DRUG ENFORCMENT ADMINISTRATION

Sworn to and subscribed before
me this _15_ day of August, 2012.

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Misc No. ___12-8326-JMH___

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR A COMPLAINT
_____/

### CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  ___ Yes  _X_ No

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
Jennifer C. Millien (FL Bar No. 171700)
Email: jennifer.millien@usdoj.gov
Assistant U.S. Attorney
jennifer.millien@usdoj.gov
500 S. Australian Avenue
Suite 400
West Palm Beach, Florida 33401
TEL: (561) 820-8711
FAX: (561) 805-9846